IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW A. CEJAS,

      Petitioner,                      No. CIV S-05-2274 GEB GGH P

   vs.

LOU BLANAS, et al.,

      Respondents.                FINDINGS AND RECOMMENDATIONS

_____/

*Introduction and Summary*

      This habeas case has a simple substantive issue with an odd procedural history. However, because respondent has affirmed exhaustion under the circumstances below, the undersigned goes to the merits of the petition. For the reasons set forth below, the petition should be denied.

*Issue*

    Whether Petitioner Was Denied His Right to a Speedy Trial

        1. Does State law regarding speedy trial create a liberty interest;

        2. Was the federal Constitutional right to speedy trial violated.

\\\\\

\\\\\

1

*Facts*

On November 9, 2005, petitioner Cejas filed his federal habeas corpus petition while he was awaiting trial on murder charges in state court. He had been arrested on charges related to the murder of his son on August 21, 2002, and had been detained in Sacramento County Jail thereafter.

The procedural facts set forth in the Declaration of Assistant District Attorney, Robin Shakely, are without substantial dispute[1]:

> On August 21, 2002, Petitioner was arrested for the murder of his twelve year old son. The Petitioner was charged with that offense in a complaint filed in the Sacramento Superior Court on August 23, 2002;
>
> That after his arrest Petitioner was scheduled to be arraigned on August 23, 2002. He was unable to be transported due to his mental state so the arraignment was put over until August 26, 2002. On that date, the Petitioner was arraigned, and the Public Defender was appointed. The Public Defender, in Petitioner's presence, requested that the case be continued until September 23, 2002;
>
> That on September 23, 2002, Assistant Public Defenders Judie Odbert and Donald Manning appeared with Petitioner and requested that the matter go over until October 28, 2002 for further proceedings;
>
> That on October 23, 2002, I made my first appearance on this case. The Petitioner was in court with his attorney, Ms. Odbert who requested, and was granted, a continuance until December 9, 2002;
>
> That on December 9, 2002, the Petitioner was again present with his attorney, Ms. Odbert, who agreed to put the case over until March 7, 2002; [I was present at this court appearance but am erroneously identified in the transcript of this appearance as Jennifer Moncrieff.];
>
> That on March 7, 2003, Assistant Public Defender Tommy Clinkenbeard appeared with Petitioner, substituting in for Ms. Odbert. Mr. Clinkenbeard had filed a motion requesting that bail be set on Petitioner's behalf and said motion was heard and denied by the court. The People filed a Motion to Consolidate the Petitioner with his co-defendant, Kathryn Potter, and Mr. Clinkenbeard requested

---

[1] In his traverse, petitioner picks at the facts for minor discrepancies without any impact on the legal issue. The court chooses to expand the record with the Shakely declaration. 28 U.S.C. § 2246, Rules, § 2254 Cases, Rule 7(b). Petitioner had the opportunity to oppose these facts in his traverse or by submitting a counter-declaration. The court accepts that petitioner did not personally waive time, until he concedes he did in December of 2003. No purpose would be served in holding an evidentiary hearing since the facts of record are sufficient on which to make a decision.

1      that the motion be heard in three months on the next court date of June 6, 2003;

2      That on June 6, 2003, the Petitioner was not brought to court because of his psychological condition.  Mr. Clinkenbeard agreed that his appearance could be waived and the Motion to Consolidate was continued until June 20, 2003;

4      That on June 20, 2003, Petitioner appeared with Mr. Clinkenbeard who requested a continuance allowing additional time to prepare a written response to the People's Motion to Consolidate until July 11, 2003.  His request was granted;

6      That on July 11, 2003, the People's Motion to Amend Ms. Potter's complaint to allege a violation of California Penal Code Section 187 (murder) was granted and Mr. Greiner was substituted in as the attorney for Ms. Potter.  Mr. Greiner requested that the Motion to Consolidate be put over until July 18, 2003, so he could file a written response.  Mr. Clinkenbeard acknowledged that date was agreeable with him;

10      That on July 18, 2003, all counsel met in chambers with Judge Orr prior to appearing on the record in the case.  On behalf of the People, I indicated that I would like the case set for preliminary hearing.  Neither Mr. Clinkenbeard nor Mr. Greiner desired to set the case for preliminary examination.  Since they did not wish to proceed and had not been the attorneys of record for as long as I had, I agreed that we could continue the case until September in the hopes that defense counsel would then be prepared to schedule the preliminary hearing;

14      That in open court, Mr. Clinkenbeard argued against the joinder upon several grounds, including that there were inconsistent defenses in that, "for example, Mr. Cejas wasn't present" at the time of the charged homicide.  The court granted the People's Motion to Join the Defendants.  The Court asked counsel, "[W]hat is the next stage?  You want this set at this point for preliminary hearing, and if so, when?"  Mr. Greiner replied, "Actually, Judge, we respectfully decline that offer from the Court to set it for preliminary hearing at this time. ...  I've spoken to both the Deputy District Attorney and Mr. Clinkenbeard.  If it's okay with the Court, we would like to set this for further status on Friday, September 26th ..."  The Court inquired whether that date would be for setting [a preliminary hearing] to which Mr. Clinkenbeard replied, "I wouldn't want that Judge.  I just ask to put it on for further proceedings.  When we're ready to set it, we'll set it."  On behalf of the prosecution, I then replied, "I'm hoping we will be ready to set it, your Honor.  That is my hope;"

21      That on September 26, 2003, after an in chambers discussion between the Court, Mr. Greiner, Mr. Clinkenbeard and myself, whereupon I made clear my ardent desire to have the case set for preliminary hearing, Mr. Greiner stated on the record, "We've agreed to go to Friday, November 21st.  On that date, I think we will be ready to set a preliminary hearing date."  I replied [although the transcript of that proceeding erroneously identifies me as Deputy D.A. Shauna Franklin], "I'm going to definitely be pushing prelim at that point, your Honor, in this case."  The court responded, "So will I."  The court also stated, "Going to be plea or set on 11/21."  Mr. Clinkenbeard responded, "The Court's going to be making an offer for us then on the– " "Mr. Clinkeneard has been objecting to being forced to set the preliminary hearing at that point;"

1  That on November 21, 2003, Mr. Clinkenbeard appeared in chambers but had to leave for another department and Mr. Greiner stood in for him. The case was continued until December 5, 2003 to argue about the setting of a preliminary hearing date, since the People's position was that it was time for a preliminary hearing to be set. The court thus continued the case until December 5, 2003, and the judge noted "... once again, for plea or set";

That on December 12, 2003, both Petitioner and his co-defendant entered pleas of not guilty and requested that the preliminary hearing be set on April 30, 2004. Significantly, the Petitioner personally waived both his right to have a preliminary hearing within ten days of his entry of plea and trial within sixty calendar days;

That on April 30, 2004, the preliminary hearing was held and both Petitioner and his co-defendant were held to answer;

Fo reasons not explicated in the Shakely declaration, or in the court minutes, trial was not set until February 16, 2005. Petitioner requested a continuance of that trial to May 3, 2005; a short continuance to May 13, 2005 was thereafter ordered. At that time, petitioner's co-defendant asked for continuance to September 20, 2005, which date was again continued because of co-defendant counsel's participation in another trial. Trial was finally commenced on October 26, 2005, only to have petitioner's counsel be diagnosed with a serious cancer, causing the trial judge to order a mistrial in petitioner's case. Petitioner's second trial commenced on or about February 9, 2006.

During his pretrial proceedings, petitioner brought a motion to dismiss (filed June 30, 2005) in which he sought dismissal of all charges based on a violation of California and federal speedy trial rights. The trial court denied the motion (August 5, 2005) on the grounds of lack of prejudice without differentiating the various bases for the motion, and on the basis that Cal. Penal Code 895(b) rights had not attached. Respondent's lodged Document 3 at 24. Petitioner sought writ review in the California appellate court which was denied (August 18, 2005), as was a petition for habeas corpus in the state supreme court (October 19, 2005).

In his second trial, petitioner was convicted of first degree murder with two strikes (lewd acts with a child). His conviction on appeal to the California Court of Appeal based on issues not pertinent herein was affirmed on December 10, 2007. Apparently, there was no further

4

review of that decision.

Respondent expressly concedes exhaustion even though the speedy trial contentions were made on pre-trial writs and habeas corpus petitions. The undersigned will not review exhaustion further.

*Discussion*

    A. *Legal Standards*

The AEDPA applies to this petition for habeas corpus which was filed after the AEDPA became effective. The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not

5

1 issue the writ simply because that court concludes in its independent judgment that the relevant
2 state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,
3 that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at
4 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the
5 objectively unreasonable nature of the state court decision in light of controlling Supreme Court
6 authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

7 The state courts need not have cited to federal authority, or even have indicated
8 awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.
9 Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is
10 contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An
11 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has
12 occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76 , 123 S. Ct. 1166, 1175 (2003).  Moreover,
13 the established Supreme Court authority reviewed must be a pronouncement on constitutional
14 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules
15 binding only on federal courts.  Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

16 However, where the state courts have not addressed the constitutional issue in
17 dispute in any reasoned opinion, the federal court will independently review the record in
18 adjudication of that issue.  "Independent review of the record is not de novo review of the
19 constitutional issue, but rather, the only method by which we can determine whether a silent state
20 court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.
21 2003).

22 B. *The Asserted State Law Created Liberty Interest By Virtue of Cal. Penal Code 859b*
23 Petitioner alleges that his preliminary hearing date was not timely set at his
24 arraignment, and that the mandatory language of Cal. Penal Code § 895b, including its dismissal
25 language, requires that the writ be granted, and that he be released, or released pending re-
26 charging and retrial.

When moving to dismiss, petitioner's counsel in the trial court made an argument expressly predicated on § 859b, and also argued that the entire period of the delay was so long that petitioner's speedy trial rights were violated. See Lodged Document 2. However, the trial judge ruled, in part, "Mr. Cejas did not enter a plea so therefore the 859b rights would not have attached." Lodged Document 3 at 24. As discussed below, the trial judge was correct. There is no need to examine the creation of the federal liberty interest issue, because even assuming § 859b creates a liberty interest, state law was not violated.

Section 859(b) provides:

> § 859b. Felony to which defendant has not pleaded guilty; setting time for examination; issuance of subpoenas; preliminary examination; dismissal of complaint
>
> At the time the defendant appears before the magistrate for arraignment, if the public offense is a felony to which the defendant has not pleaded guilty in accordance with Section 859a, the magistrate, immediately upon the appearance of counsel, or if none appears, after waiting a reasonable time therefor as provided in Section 859, shall set a time for the examination of the case and shall allow not less than two days, excluding Sundays and holidays, for the district attorney and the defendant to prepare for the examination. The magistrate shall also issue subpoenas, duly subscribed, for witnesses within the state, required either by the prosecution or the defense.
>
> Both the defendant and the people have the right to a preliminary examination at the earliest possible time, and unless both waive that right or good cause for a continuance is found as provided for in Section 1050, the preliminary examination shall be held within 10 court days of the date the defendant is arraigned or pleads, _whichever occurs later_, or within 10 court days of the date criminal proceedings are reinstated pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2.
>
> Whenever the defendant is in custody, the magistrate shall dismiss the complaint if the preliminary examination is set or continued beyond 10 court days from the time of the arraignment, plea, or reinstatement of criminal proceedings pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2, and the defendant has remained in custody for 10 or more court days solely on that complaint, unless either of the following occur:
>
> (a) The defendant personally waives his or her right to preliminary examination within the 10 court days.
>
> (b) The prosecution establishes good cause for a continuance beyond the 10-court-day period.

> For purposes of this subdivision, "good cause" includes, but is not limited to, those cases involving allegations that a violation of one or more of the sections specified in subdivision (a) of Section 11165.1 or in Section 11165.6 has occurred and the prosecuting attorney assigned to the case has another trial, preliminary hearing, or motion to suppress in progress in that court or another court.  Any continuance under this paragraph shall be limited to a maximum of three additional court days.
>
> If the preliminary examination is set or continued beyond the 10-court-day period, the defendant shall be released pursuant to Section 1318 unless:
>
> (1) The defendant requests the setting of continuance of the preliminary examination beyond the 10-court-day period.
>
> (2) The defendant is charged with a capital offense in a cause where the proof is evident and the presumption great.
>
> (3) A witness necessary for the preliminary examination is unavailable due to the actions of the defendant.
>
> (4) The illness of counsel.
>
> (5) The unexpected engagement of counsel in a jury trial.
>
> (6) Unforeseen conflicts of interest which require appointment of new counsel.
>
> The magistrate shall dismiss the complaint if the preliminary examination is set or continued more than 60 days from the date of the arraignment, plea, or reinstatement of criminal proceedings pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2, unless the defendant personally waives his or her right to a preliminary examination within the 60 days.

(Emphasis added).

See also People v. Kowalski, 196 Cal. App. 3d 174, 178, 242 Cal. Rptr. 32, 34 (1987) (repeating the emphasized language).

While normally a defendant pleads at the time he is arraigned, Cal. Penal Code § 859a, the seemingly mandatory nature of the language is actually discretionary and permits continuances in the interest of justice.  Cronk v. Municipal Court, 138 Cal. App. 3d 353, 188 Cal. Rptr. 28 (1982).  Moreover, there is no language in § 859a which requires the personal waiver of the defendant if a plea is not entered.

The facts set forth in the Shakely declaration and the docket sheet of the trial court, Document 1, demonstrate that no plea was entered in this somewhat notorious case until

December 12, 2003, and that defense counsel completely concurred in that chronology. Indeed, there was discussion about "setting the preliminary examination," and the only way it could be "set" was to enter the plea.[2] At his entry of plea on December 12, 2003, defendant personally waived time for the conduct of the preliminary hearing which was eventually held on April 30, 2004.

Thus, because a plea was not entered until December 12, 2003, and time was waived thereafter, § 859b was not violated; defendant suffered no violation of his state law speedy [pre]trial rights, as was found expressly or implicitly by all state courts.

C. *Federal Speedy Trial Rights*[3]

Further unobjected to delay occurred after the preliminary hearing, and trial was not commenced until October 26, 2005. As previously indicated, during that trial, petitioner's counsel became very ill and a mistrial was declared in petitioner's case (his co-defendant's trial continued). Petitioner's second trial recommenced on February 9, 2006. The total time period elapsed from arrest to second trial was approximately 3 and one-half years.

> The Sixth Amendment guarantees that criminal defendants "shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. To determine whether a defendant's Sixth Amendment speedy trial right has been violated, we balance the following four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
>
> None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant's speedy trial right has been violated. Id. at 533, 92 S.Ct. 2182. Rather the factors are related and "must be considered together with such other circumstances as may be relevant." Id. Further, the balancing of these factors, and other relevant circumstances, "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." Id.

---

[2] Thus, there appears to be an easily apparent exception to the otherwise rigorous requirement of speedy preliminary examinations. As long as the plea is not entered, no preliminary examination need be scheduled since the entry of plea will be the "later" of arraignment or plea.

[3] To the extent that petitioner alleges a violation of California's constitutional speedy trial rights, such a claim is non-cognizable in federal habeas corpus.

1   United States v. Mendoza, __F.3d__, 2008 WL 553744 (2008).

2              The Sixth Amendment right to a speedy trial does not attach until the defendant becomes an "accused." United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459 (1971). A person becomes an accused when the prosecution is initiated against him either through "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." Id. at 320, 92 S.Ct. at 463. The Supreme Court has stated that a person is considered an accused when he is arrested, regardless of when an indictment is finally handed down. Dillingham v. United States, 423 U.S. 64, 65, 96 S.Ct. 303, 304 (1975). Therefore, for purposes of the analysis here, the speedy trial clock commenced upon petitioner's arrest in August 2002.

             On balance, the Barker factors weigh in favor of not finding a speedy trial violation. Because the delay in this case lasted for more than one year, the delay is presumptively prejudicial, and all of the Barker factors must be considered. United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003). The length of delay here, although significant, is not of the type where this factor overwhelmingly weighs in petitioner's favor. See United States v. Lam, 251 F.3d 852, 857 (9th Cir. 2001) and cases cited therein (fifteen month delay only minimally in favor of defendant). The undersigned assesses significant weight here on the delay factor as trial courts have a duty, as the months go by and continuances are granted, "to just say no" to further requested continuances. The factor of delay per se weighs in petitioner's favor. This is especially so in a situation where the defendant is awaiting trial as an incarcerated pretrial detainee. Petitioner's case involved a charge of murder with special circumstances, and was complicated somewhat because of the presence of the mother of the dead child as a co-defendant; however, the facts, although atrocious, were not of special complexity. However, given the stakes at trial (murder with special circumstances) it is doubtful that any counsel would desire to get the case to trial without full investigation and preparation. This conclusion is affirmed by the actions of trial counsel when continuances were granted. As the trial court noted, petitioner was

represented by counsel at every stage of the pretrial proceedings, and until the motion to dismiss filed in August 2005, counsel for defendants, one or the other, had been complicit, if not the instigator, in every single continuance up to August 2005. Petitioner never objected to any continuance requested by his co-defendant. This factor weighs heavily against petitioner, <u>Lam</u>, <u>supra</u>, as the law takes a dim view of dog-in-the-manger tactics. Certainly after trial commenced in October 2005, the subsequent illness of trial counsel, necessitating a mistrial, could not have been foreseen, and was not the fault of the prosecution. The undersigned further notes that on several occasions throughout the pretrial chronology, matters had to be continued because of the psychological condition of the defendant. Turning to the final <u>Barker</u> factor, in deciding the 2005 motion to dismiss, the trial judge found that petitioner had not been actually prejudiced, and petitioner offers nothing in federal court that was not proffered in state court (primarily bald conclusions of prejudice). Especially weak was petitioner's claim that one of his alibi witnesses (a work supervisor) now had no memory of petitioner's work whereabouts because of the passage of time. However, to the extent there was any merit to the alibi, most probably the employer would have had some accounting records demonstrating the times, and perhaps places of employment during the pertinent time, and no facts are given regarding attempts to get such information. Petitioner is unconvincing in his conclusions of prejudice.

Ultimately, the issue is not whether the federal courts sitting de novo would find the delay here too lengthy in light of all the pertinent factors. The issue is whether the state courts unreasonably applied Supreme Court precedent. In <u>Barker</u> itself, the defendant was subject to a five year delay. The first three and one-half years were occasioned by the prosecution attempting to try a co-defendant first so that testimony from that trial might be available in the defendant's trial. After that period of time, continuances were granted because of the illness of a prosecution witness. The Supreme Court refused to find a Sixth Amendment speedy trial violation under the circumstances. Given the facts of <u>Barker</u>, which have less defendant involvement than the facts herein, and more total delay, the undersigned cannot find

that the state courts unreasonably applied <u>Barker</u> in petitioner's case.  The state courts were not AEDPA unreasonable in failing to find a Sixth Amendment speedy trial violation.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that the petition for habeas corpus be denied in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 04/15/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
ceja2274.157